**IT IS ORDERED as set forth below:**



**Date: September 24, 2024**

_____
**Lisa Ritchey Craig
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **IN THE MATTER OF:** | : | **CASE NUMBERS** |
| | : | |
| | : | BANKRUPTCY CASE |
| JEROME BELCHER, SR., AND JANIFER | : | 22-56542-LRC |
| ANNETTE BELCHER | : | |
| | : | |
| Debtors. | : | |
| _____ | : | |
| | : | |
| GMT MANAGEMENT GROUP, LLC, | : | ADVERSARY PROCEEDING |
| OAKMOOR VENTURES II, LLC, | : | NO. 23-05084-LRC |
| KINGDOM EQUITY, LLC; SAC | : | |
| FUTURO, LLC, AARON KRAMER, | : | |
| AARON K INVESTMENTS, LLC, AKI | : | |
| INVESTMENTS, LLC, HOBACK | : | |
| INVESTMENTS, LLC, CULOIR | : | |
| INVESTMENTS, LLC, ROKA | : | |
| CONSULTANTS, INC., WALSH | : | |
| CAPITAL FUND TRUST, CARMELO | : | |
| PALANO, LAMROC REAL ESTATE, | : | |
| MARC ENSIGN, DREAMS FOR LIFE, | : | |
| LLC, LINDA J. LEWIS, PRUDENT | : | |
| SHORE INVESTMENT, LLC, WAYNE | : | |
| GODWIN, ANTHONY PALANO, JAMES | : | |
| CASE, TANNER HOLDINGS, LLC, | : | |
| BRICKS TO CLICKS, LLC, MICHAEL | : | |
| HAMMOND, DENISE HAMMOND, | : | |

| | |
|---|---|
| DAVID ZIONTS, DENISE WAYNE, KATHLEEN PALANO, WGF VENTURES, LLC, FASTHOMESOLUTIONS.COM, LLC, MICHAEL ZIONTS, PAMELA JORDAN, AND HOWARD M. SHORE | : <br> : <br> : <br> : <br> : <br> : <br> : |
| Plaintiffs. | : <br> : |
| v. | : <br> : |
| JEROME BELCHER, SR. AND JANIFER ANNETTE BELCHER, | : <br> :    IN PROCEEDINGS UNDER <br> :    CHAPTER 7 OF THE |
| Defendants. | :    BANKRUPTCY CODE |

# ORDER

Before the Court is the *Motion for Partial Summary Judgment* (the "Motion"), Doc. 11, filed by Plaintiffs Aaron K Investments, LLC, Aki Investments, LLC, Bricks To Clicks, LLC, James Case, Culoir Investments, LLC, Dreams for Life, LLC, Marc Ensign, GMT Management Group, LLC, Wayne Godwin, Denise Hammond, Michael Hammond, Hoback Investments, LLC, Pamela Jordan, Kingdom Equity, LLC, Aaron Kramer, Lamroc Real Estate, Linda J. Lewis, Oakmoor Ventures II, LLC, Anthony Palano, Carmelo Palano, Kathleen Palano, Prudent Shore Investment, LLC, Roka Consultants, Inc., Sac Futuro, LLC, Howard M. Shore, Tanner Holdings, LLC, WGF Ventures, LLC, Walsh Capital Fund Trust, Denise Wayne, David Zionts, Michael Zionts, fasthomesolutions.com, LLC ("the Plaintiffs"). Debtors Jerome Belcher, Sr., and Janifer Annette Belcher ("Mr. and Mrs. Belcher" respectively) have not filed a response. The Motion arises in connection with a complaint to determine the dischargeability of a particular debt (the "Complaint") filed by Plaintiffs. Doc. 1. The Court has further considered Plaintiffs' Supplemental Brief. Doc. 14. This matter constitutes a core proceeding, over which this Court

2

has subject matter jurisdiction. *See* 28 U.S.C §§ 1334; 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409(a).

## PROCEDURAL HISTORY AND UNDISPUTED FACTS[1]

Mr. and Mrs. Belcher filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code[2] on August 22, 2022. Plaintiffs filed the Complaint on June 16, 2023, asserting the following claims: Counts I and II: Nondischargeability under § 523(a)(2)(A); Count III: Nondischargeability under § 523(a)(4); Count IV: Nondischargeability under § 523(a)(6); Count V: Objection to Discharge Under § 727(a)(2); and Count VI: Objection to Discharge Under § 727(a)(5) and (a)(7). In the instant Motion, Plaintiffs seek summary judgment in their favor only as to Counts I and II against both Mr. and Mrs. Belcher and as to Counts III and IV against Mrs. Belcher only. Brief, pp.18–19.

Plaintiffs are claimants in the associated bankruptcy case, Case No. 22-56542, who loaned funds to Mr. and Mrs. Belcher to purchase houses, renovate them, and sell them for a profit. Statement of Undisputed Material Facts ("SOMF") ¶¶ 11–17.

Mrs. Belcher has held her real estate license since 1997 and broker license since 2003. SOMF ¶ 1. Mrs. Belcher began working with R. J. Palano in 2017, and in that arrangement she would buy and sell houses for Mr. Palano,[3] entities owned or controlled by him, and entities or individuals investing through Mr. Palano. SOMF ¶¶ 2–3. Mrs. Belcher was paid a commission for this work. SOMF ¶ 4. Mrs. Belcher also had an established relationship with National ERA

---

[1] The Statement of Undisputed Facts is deemed admitted because Defendants failed to respond. BLR 7056-1(a)(2) ("All material facts contained in the moving party's statement that are not specifically controverted in respondent's statement are deemed admitted.").
[2] 11 U.S.C. §§ 101, *et al*. Further citations to § are to the Bankruptcy Code unless otherwise noted.
[3] Unless otherwise stated, hereinafter Mr. Palano refers to R. J. Palano, not to be confused with any plaintiff with the last name Palano.

Servicing, LLC, which managed rental properties after they were acquired.  SOMF ¶ 6.  Mrs. Belcher managed dozens of properties for Mr. Palano, entities owned or controlled by him, and entities or individuals investing through Mr. Palano.  SOMF ¶ 8.  Through all this, Mr. Palano and the Plaintiffs developed trust in Mrs. Belcher.  SOMF ¶ 9.

In 2018, Mrs. Belcher informed Mr. Palano of her "exclusive access to a governmental program that offered access to a list of houses held by government agencies that could be purchased, renovated, and resold for a guaranteed profit."  SOMF ¶ 10.  Mrs. Belcher represented as profitable five test loans where Plaintiffs would loan money to the Belchers and their business, Belcher Realty Group ("BRG"), for the purchase, renovation and resale of properties at a profit.  SOMF ¶¶ 11–17.  Mrs. Belcher represented to Plaintiffs that the homes involved in the test loans did achieve the guaranteed profit that Mrs. Belcher had projected, but those representations were untrue.  SOMF ¶¶ 14, 16.  In reality, the Belchers took out additional loans to pay back the Plaintiffs on those first proof-of-concept properties.  SOMF ¶¶ 11–17.  Based on this "proof of concept" and Mrs. Belcher's representations and actions, Plaintiffs invested over $25 million from 2018–2020 into houses which Plaintiffs believed Mrs. Belcher and her entities would purchase, renovate and resell. *See* SOMF ¶¶ 21.

For each investment by Plaintiffs, Mrs. Belcher signed a promissory note in her individual capacity and as a corporate representative of BRG, and Mr. Belcher signed in his individual capacity.  SOMF ¶ 22.  Each note lists the amount of debt, address of the house, and the date of the note, and states: "[i]t is the intention of the Borrower to resell the house securing this Promissory Note, within 6 months from date hereof, whereupon Borrower will pay Principal in full, plus all interest accrued.  Borrower will also pay as additional interest an amount equal to twenty percent

4

(20%) of the net profits generated from the resale of the security." SOMF ¶ 24. Mr. and Mrs. Belcher have stipulated that Mrs. Belcher represented to Plaintiffs that they were not allowed to obtain a deed to secure debt or other real estate lien on the property because of the nature of the Government Program and that Plaintiffs reasonably relied on Mrs. Belcher's representation as the person most familiar with the Government Program and relied on Mrs. Belcher to protect their interests. SOMF, ¶ 58; Stipulation on Examination of Jerome Belcher, Sr. and Janifer Annette Belcher Pursuant to Federal Rule of Bankruptcy Procedure 2004, Case 22-56542-lrc, Doc. 90 ("Stipulation"), ¶¶ 20–21.[4]

In total, Plaintiffs made thirty-eight loans to the Belchers for the purchase of specified properties that were to be renovated and resold at a profit; in each instance, the Belchers never in fact purchased the property specified in the corresponding promissory note. SOMF ¶¶ 39–49 (the "Never Purchased Notes"). A list of the subject properties and the Plaintiffs associated with the Never Purchased Notes are summarized in the SOMF from pages 8 to 11. The Never Purchased Notes resulted in $5,852,410.69 in claims held by Plaintiffs. SOMF at pp. 8–11. The funds provided to the Belchers to purchase the subject properties were not used for said purchase, nor were the funds returned to Plaintiffs; instead, the funds were kept by BRG or its affiliates, the Belchers' other businesses: Seven Day Solutions, LLC (SDS) or SOA Seven Day Solutions, LLC (SOA SDS). SOMF ¶ 49; Stipulation, ¶ 11.

Unlike with the "Never Purchased Notes", Mrs. Belcher, in her individual capacity and as an officer of BRG did, in fact, take out other loans for the purchase of specified properties (the "Second Lien Notes") and used those funds for their specified purpose. In all, Mrs. Belcher caused

---

[4] The Stipulation specifically provided that the Stipulation would be "admissible for all purposes in this Bankruptcy Case 22-56542-lrc and any adversary proceeding to be filed in connection with the case."

5

BRG, SD, or SOA SDS to purchase seventy-six homes, which were secured by multiple lenders. SOMF ¶¶ 50–65. For these properties, although Mrs. Belcher *did* use the Plaintiff's loans to purchase the specified property, she then took out *additional* loans against said properties and knew, or had reason to know that, for each additional loan, there would not be sufficient proceeds to pay off said loan. SOMF ¶¶ 64–65; Stipulation, ¶ 28. Those homes were purchased by BRG, SDS, or SOA SDS with funds from Plaintiffs in either the purchaser's name, or in the name of Hogar Community Reinvestment, LLC ("Hogar"), a national non-profit from which BRG obtained the right to purchase the properties, or Family Community Housing Association, Inc. ("FCHA"), a state non-profit with the same relationship. SOMF ¶ 62. Mrs. Belcher admits that, at the time of making those purchases, she had the intent to obtain further loans secured by those properties. SOMF ¶ 65; Stipulation, ¶ 25. She also stipulated that she knew, or had information available to her to know, that with the additional loans taken out on each of the properties, the anticipated proceeds of the properties would be insufficient to pay the Second Lien Notes and the additional loans taken on each of the underlying houses. SOMF ¶ 28; Stipulation, ¶ 28. The SOMF, in paragraphs 65 through 450, details the repeated pattern of the Belchers [through BRG, SDS, and SOA SDS] purchasing a property with a Plaintiff's loan then subsequently taking out a second, secured loan. The Plaintiffs who were party to the Second Lien Notes and the properties listed in the Second Lien Notes are summarized in pages 13–19 of the SOMF, and these Plaintiffs hold a total of $9,636,767.90 in claims. SOMF at pp.13–19.

For three properties, the Belchers, through BRG, SDS, SOA SDS, or Hogar, did purchase the properties listed in Plaintiffs' notes (the "Sold But Not Paid Notes"). SOMF ¶¶ 441, 449–50. These properties were subsequently sold, but Mrs. Belcher has stipulated that, as the sole manager

6

or member of BRG, SDS, or SOA SDS, she exercised exclusive control of the funds received from the sales of these properties and that no funds were remitted to Plaintiffs. SOMF ¶¶ 451–54; Stipulation, ¶¶ 40–41. Instead, Mrs. Belcher caused the seller to retain such proceeds for use in its business operations. Stipulation, ¶ 42. The affected four Plaintiffs and the three properties are listed on page 61 of the SOMF and comprise $320,791.57 in claims. SOMF at p.61.

## DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a court will grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c), FED. R. BANKR. P. 7056. The moving party bears the burden of establishing the right to summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir. 1982). Once the moving party makes a *prima facie* showing of its right to judgment as a matter of law, the nonmoving party must go beyond the pleadings and demonstrate that a material issue of fact exists precluding summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Where the facts are not disputed, the Court must determine whether the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The substantive law [applicable to the case, here, §§ 523(a)(2), (a)(4), and (a)(6),] will identify which facts are material." *Id*. Further, to "ensure that the Congressional policy in favor of providing a debtor with a fresh-start is furthered, exceptions to dischargeability . . . are narrowly construed." *In re Finnegan*, 428 B.R. 449, 453 (Bankr. N.D. Ohio 2010).

At the summary judgment stage of a proceeding, the Court's function is not to determine

the truth of the matter by weighing the evidence, but rather to determine if there is a genuine issue for trial. *Id*. When making this determination, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir. 1985). "All reasonable doubts and inferences should be resolved in favor of the opponent." *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502 (11th Cir. 1985).

### Counts I & II - Never Purchased Notes and Second Lien Notes - § 523(a)(2)(A)

As to the Never Purchased Notes and the Second Lien Notes, Plaintiffs seek a determination of nondischargeability based on false representation, false pretenses, and/or actual fraud and a judgment of $5,852,410.69 for the Never Purchased Notes and $9,636,767.90 for the Second Lien Notes against both Mr. and Mrs. Belcher. Section 523(a)(2)(A) excepts from discharge "any debt—(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A).

To prevail under § 523(a)(2)(A), Plaintiffs must show: (1) the debtor made a false representation with the intention of deceiving the creditor; (2) the creditor relied on the false representation; (3) the reliance was justified; and (4) the creditor sustained a loss as a result of the false representation. *Evolved Cinema, LLC v. Sams* (*In re* Sams) 2024 WL 268754, at *2 (Bankr. N.D. Ga. Jan. 24, 2024) (citing *Presley v. Presley* (*In re Presley*), 490 B.R. 633 (Bankr. N.D. Ga. 2013)). For a creditor to establish false pretenses, the creditor must show: "(1) the defendant made an omission or implied misrepresentation; (2) promoted knowingly and willingly by the defendant; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff;

8

(4) which wrongfully induced the plaintiff to advance money, property, or credit to the defendant." *Cawthon v. Cawthon* (*In re Cawthon*), 594 B.R. 913, 920 (Bankr. N.D. Ga. 2018). "As distinguished from false representation, which is an express misrepresentation, false pretense involves an implied misrepresentation or conduct intended to create and foster a false impression[.]" *Minority Equity Capital Corp. v. Weinstein* (*In re* Weinstein), 31 B.R. 804, 809 (Bankr. E.D.N.Y. 1983). Concerning the third factor, justifiable reliance is a lesser standard than reasonable reliance and is a subjective standard, rather than an objective standard. *See In re Finnegan*, 428 B.R. 449, 455 (Bankr. N.D. Ohio 2010). To fail to meet the justifiable reliance standard "[Plaintiffs'] conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility . . . [;] justifiable reliance is gauged by an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." *In re Moss*, 598 B.R. 508, 515 (Bankr. N.D. Ga. 2019) (quoting *City Bank & Trust Co. v. Vann* (*In re Vann*), 67 F.3d 277, 283 (11th Cir. 1995)).

Plaintiffs point to false representations and conduct by Mrs. Belcher to support the argument that she created a false impression that Plaintiffs' funds would be invested in particular properties, "awarded" to the Belchers on a somewhat exclusive basis not available to other investors, and that the investment would produce a profit sufficient to repay the loans, even though they were unsecured. Mrs. Belcher repeatedly made false statements to Plaintiffs, representing in email messages to Mr. Palano that BRG had been "awarded" the right to acquire property under BRG's program with Hogar Community Reinvestment or the National Community Stabilization Trust and providing the property address, the amount to be purchased, the return/profit, tax records,

9

and photos of the properties. SOMF ¶ 45. Mrs. Belcher also falsely touted the success of the test loans to make the investment seem more profitable and secure than it was and made false statements to Plaintiffs about the ability to secure their investment with a deed to secure debt. In some cases, the properties advertised to Plaintiffs for investment were never purchased, and in other cases, the properties were purchased but Mrs. Belcher caused them to be used as collateral for additional loans. In all cases, the funds loaned to the Belchers were not returned to Plaintiffs. SOMF ¶ 48.

The Court agrees with Plaintiffs that the record contains sufficient undisputed facts, which Mrs. Belcher has not contested, even with inferences drawn in favor of Mrs. Belcher, to support a finding that Mrs. Belcher made these statements with an intent to deceive and induce Plaintiffs into investing. Further, Plaintiffs have shown they had reason to trust Mrs. Belcher, an experienced real estate professional with a track record of working with their agent, Mr. Palano; that they in fact relied on Mrs. Belcher's misstatements and would not have made these investments and placed their funds at risk without Mrs. Belcher's false representations; and, thus, that their funds were lost as a result of her fraud.

But the Court does not agree with Plaintiffs that Mr. Belcher owes Plaintiffs a debt for money, property, services, or an extension, renewal, or refinancing of credit obtained by fraud. There are insufficient undisputed facts to support a finding that Mr. Belcher made false representations or took steps to create a false impression with the intent to induce Plaintiffs to make the loans. Although Mr. Belcher signed the promissory notes that purported to be secured by individual properties, the undisputed facts do not demonstrate that Mr. Belcher did so knowing that the properties would not be purchased. Indeed, there is only one statement within the SOMF

that supports a finding that Mr. Belcher made a misrepresentation to Plaintiffs. Plaintiffs state that "Defendants affirmatively represented that the guaranteed profit had been achieved based on her now proven proof of concept 'just as promised.'" The record citation given, however, does not support the conclusion that Mr. Belcher made any affirmative representation. *See* Janifer Belcher Deposition, at 37:21–38:6.

In Plaintiffs' Supplemental Brief, they argue that, because Mr. Belcher signed the promissory notes, Mrs. Belcher's fraudulent actions should be imputed to him for purposes of § 523(a)(2)(A). Plaintiffs rely on the relatively recent United States Supreme Court decision in *Bartenwerfer v. Buckley*, 598 U.S. 69, 143 S. Ct 665, 214 L. Ed. 2d 434 (2023), which they assert stands for the broad proposition that, if money is obtained by false pretenses, a false representation or actual fraud, the underlying debt is nondischargeable, regardless of who committed the fraud. However, as explained by Judge Smith, "Plaintiff[s have] misconstrued *Bartenwerfer*." *Matter of Colquitt*, 2023 WL 2361103, at *8 (Bankr. M.D. Ga. Mar. 2, 2023).

> In *Bartenwerfer*, Kate and David Bartenwerfer decided to remodel a house they jointly owned and to sell it for profit. David was solely involved in the renovations. After the repairs, the house was placed on the market and sold to Buckley. In conjunction with the sale, Kate and David attested that they had disclosed all material facts about the house. However, after the purchase, Buckley discovered numerous undisclosed defects, requiring repairs costing over $200,000. He sued Kate and David, alleging that he had been damaged by his reliance on their misrepresentations. The jury awarded him judgement against the Bartenwerfers for breach of contract, negligence and nondisclosure of material facts. When the Bartenwerfers filed for Chapter 7 bankruptcy, Buckley filed a § 523(a)(2)(A) complaint.
>
> In defense, Kate argued that she had been unaware of any of the misrepresentations. Accordingly, she argued that, since she did not knowingly make a false representation, her obligation under the judgement was dischargeable. The Supreme Court disagreed. It held that the wording of the statute only required that the debt arise from someone's fraud. However, once fraud has been established, § 523(a)(2)(A) makes the debt non-dischargeable as to all who are liable, regardless of whether or not they had participated in the fraud. The Court noted that court's [sic] have traditionally held principals liable for

> the fraudulent acts of their agents and individuals have been held liable for the frauds committed by their partners within the scope of the partnership.
>
> Understanding § 523(a)(2)(A) to reflect the passive voice's usual "agnosticism" is thus consistent with the age-old rule that individual debtors can be liable for fraudulent schemes they did not devise.

*Id.* As in *Colquitt*, Mr. Belcher's liability to Plaintiffs "does not arise from the fraud of another for which he is vicariously liable. Rather, his liability is a direct liability on the note[s] that he signed . . . ." *Id.* Plaintiffs "had to prove that this debt was incurred by actual fraud committed by" Mr. Belcher, and "[n]othing in *Bartenwerfer* changes this."[5] *Id.*

### Counts III and IV - Sold But Not Paid Notes - §§ 523(a)(4) and (a)(6)

As to the Sold But Not Paid Notes,[6] Plaintiffs first contend that the debt owed by Mrs. Belcher is nondischargeable under § 523(a)(4) because the proceeds upon the sale of the properties purchased with Plaintiffs' funds were not returned to Plaintiffs and were instead embezzled. Embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Ga. Dep't Human Servs. v. Ngwangu (In re Ngwangu)*, 529 B.R. 358, 365 (Bankr. N.D. Ga. 2015) (quoting *Fernandez v. Havana Gardens, LLC,* 562 F. App'x. 854, 856 (11th Cir. 2014)). To establish embezzlement, "[p]laintiff must show improper use of property of another that is lawfully in the debtor's possession." *In re Logan*, 2015 WL 4940041, at *7 (Bankr. N.D. Ga. July 1, 2015). "Thus, to amount to embezzlement, conversion must be committed by a perpetrator with fraudulent intent." *In re Sherman*, 603 F.3d 11, 13 (1st Cir. 2010)). "Fraudulent intent may be determined from the facts

---

[5] Plaintiffs have not argued for or pointed to any undisputed facts to support a finding that there is any independent basis under Georgia law for imposing vicarious liability on Mr. Belcher for Mrs. Belcher's fraud.
[6] The Court need not address the Never Purchased Notes and the Second Lien Notes here, as the Court has already found these debts nondischargeable as to Mrs. Belcher under § 523(a)(2)(A).

and circumstances surrounding the act." *In re Veneziano*, 615 B.R. 666, 677 (Bankr. D. Conn. 2020). "Concealment may furnish evidence of fraudulent intent . . . ." *In re Queen*, 2023 WL 2751228, at *15 (Bankr. N.D. Ga. Mar. 31, 2023).

The undisputed facts show that Mrs. Belcher, through BRG or its affiliates, received funds from Plaintiffs to buy specific properties and did in fact cause the properties to be purchased. SOMF ¶ 450. Although the promissory notes obligated Mrs. Belcher to repay the debts upon the sale of the properties, she did not do so when the properties were sold. SOMF ¶¶451–53. Mrs. Belcher did not inform the Plaintiffs that the properties had been sold and caused the funds to be used in her business. SOMF ¶ 454. The issue here, however, is that Plaintiffs had no property interest in the properties or the proceeds. *In re Bradley*, 507 B.R. 192, 200 (B.A.P. 6th Cir. 2014) ("As owner of the collateral, the debtor remained the owner of its proceeds, even though both the collateral and its proceeds were subject to a security interest. No person can embezzle from himself."); *see also In re Parkins,* 2012 WL 7749187, at *7 (Bankr. E.D. Tenn. Dec. 7, 2012); *Queen*, 2023 WL 2751228, at *9. Accordingly, summary judgment as to § 523(a)(4) is not warranted.

Second, Plaintiffs seek a determination of nondischargeability for willful and malicious injury and a judgment against Mrs. Belcher as to the debts for the Sold But Not Paid Notes. Section 523(a)(6) states that a debt may be excepted from discharge "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). A finding of "willfulness" requires "'a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another.'" *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012) (citing *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1163 (11th Cir.

1995)); *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998)) ("An injury is willful when the injury itself was 'deliberate or intentional' and not merely the result of an intentional act that resulted in injury."). Accordingly, to be willful, the debtor must commit "an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Jennings*, 670 F.3d at 1334; *see also In re Kane*, 755 F.3d 1285, 1293 (11th Cir. 2014). Malicious means "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *Jennings*, 670 F.3d at 1334 (citing *Walker*, 48 F.3d at 1164); *Kane*, 755 F.3d at 1293. No proof of "specific intent to harm another" is necessary to establish malice. *Id*.

Courts have struggled to apply § 523(a)(6) in the case of purely economic injuries to avoid expanding the exception to cover debts arising from a "simple" breach of contract. *See In re Gagle*, 230 B.R. 174, 181 (Bankr. D. Utah 1999) ("*Geiger* indicates that a knowing breach of contract alone is not enough to render a debt nondischargeable. The Court in *Geiger* stated, '[a] construction so broad would be incompatible with the well-known guide that exceptions to discharge should be confined to those plainly expressed.'"); *In re Ferreira*, 608 B.R. 300, 307 (Bankr. N.D. Ga. 2019) (noting that § 523(a)(6) "requires more than just a knowing breach of a contract"). In general, "the failure to pay a debt does not come within § 523(a)(6)." *In re Rylant*, 594 B.R. 783, 789 (Bankr. D.N.M. 2018) (citing *Byrnes v. King*, 2010 WL 2733394, at \*2 (Bankr. D.N.J. July 8, 2010) (party's failure to pay mortgage was insufficient to show party's intention of injury under § 523(a)(6)); *In re Abdallah*, 2012 WL 631845, at \*1 (Bankr. M.D. Pa. Feb. 27, 2012) ("If the failure to pay a just debt were the only criteria that would qualify under this exception to discharge [§ 523(a)(6) ], then no debt would ever be dischargeable."); *In re Gucciardo*, 577 B.R. 23, 38 (Bankr. E.D.N.Y. 2017) ("Absent evidence of intent to injure, and of malice, the failure to

repay, even if combined with payment to other creditors, does not constitute a 'willful and malicious act' under § 523(a)(6)."); *In re Salzillo*, 2013 WL 4525199, at *6 (Bankr. W.D. Tex. Aug. 27, 2013) ("The Defendant's failure to pay the Plaintiffs their money, while regrettable, is not proof in and of itself of willful and malicious injury."). "It is and should be the rare breach of contract case that comes within § 523(a)(6)." *Rylant*, 594 B.R. at 789.

In an effort to narrow the scope of § 523(a)(6), some courts have held that a breach of contract can result in a willful and malicious injury only if the conduct could also be classified as a tort. The Eleventh Circuit Court of Appeals, however, has rejected a *per se* rule that conduct must be classified as a tort to result in a willful and malicious injury. *In re Monson*, 661 F. App'x 675, 683 (11th Cir. 2016). Instead, the court stated that "the dischargeability of contractual debts under Section 523(a)(6) depends upon the knowledge and intent of the debtor at the time of the breach." *Id.* (citations omitted); *see also In re Corona*, 657 B.R. 554, 568 (Bankr. N.D. Ga. 2024); *see also In re Farr*, 2018 WL 1577934, at *5 (Bankr. N.D. Ga. Mar. 27, 2018) ("For a conversion debt to be deemed nondischargeable, the creditor must show the debtor not only intended the conversion but also the debtor knew a transfer of the property was wrongful and certain to cause financial harm to the creditor.").

The Court questions whether the debt owed by Mrs. Belcher under the promissory notes was created by the conduct that Plaintiffs argue caused a willful and malicious injury. *See In re Queen*, 2023 WL 2751228, at *11 (Bankr. N.D. Ga. Mar. 31, 2023) (finding no claim under § 523(a)(6) because the debt at issue was a judgment debt *for* breach of contract, rather than a debt for willful and malicious injury committed after the debt arose). Plaintiffs argue that Mrs. Belcher caused a willful and malicious injury when she sold the properties and did not repay Plaintiffs in

breach of her contractual obligation to do so. But the debt at issue arose when Mrs. Belcher signed the promissory notes, not when she failed to repay the notes. *See id*.

Assuming, without deciding, that Plaintiffs can establish that Mrs. Belcher's breach of the contract created the debt at issue, there are insufficient undisputed facts from which the Court could conclude that Mrs. Belcher's decision to use the sale proceeds to repay Plaintiffs was substantially certain to result in these four Plaintiffs going unpaid. The Court has no information regarding the total amount of debt outstanding at the time of the sales or whether Mrs. Belcher's businesses had other resources from which to repay these four Plaintiffs. *See generally In re Wells-Lucas*, 2021 WL 1234454, at *12 (Bankr. N.D. Ga. Mar. 31, 2021) (noting that a claim for willful and malicious injury would not lie if "Debtor, despite employing fraudulent and wrongful tactics to earn the investment in the first place, truly believed or intended Plaintiff would earn her money back"). Accordingly, the Court cannot conclude that Mrs. Belcher's conduct was substantially certain to injure Plaintiffs (*i.e.*, that the injury was "willful"),[7] and "the evidence here, viewed in the light most favorable to the Debtor, is not sufficient to justify that conclusion at the summary judgment stage." *Matter of Knight*, 574 B.R. 800, 812 (Bankr. N.D. Ga. 2017).

Finally, if the Court did find that Mrs. Belcher's breach of the contract resulted in a debt for willful and malicious injury, the Court has insufficient facts to determine the portion of the debt that arose from Mrs. Belcher's willful and malicious conduct. Plaintiffs argue that Mrs.

---

[7] It remains an open question in the Eleventh Circuit whether "the term 'substantial certainty' is a subjective standard, requiring a creditor to prove that a debtor actually knew that the act was substantially certain to injure the creditor, or an objective standard, requiring a creditor to show only that a debtor's act was in fact substantially certain to cause injury." *Kane*, 755 F.3d at 1293 ("This Court has never had occasion to parse that distinction, and we need not do so today."); *see also Watson v. Bradsher*, 2022 WL 3335523, at *6 n.7 (N.D. Ga. Aug. 12, 2022). Like the court in *Kane*, this Court need not resolve the question because, regardless of whether the proper legal standard is objective or subjective, the Court has no facts upon which to conduct such an analysis.

Belcher caused a willful and malicious injury when she sold the properties and did not pay Plaintiffs. If these deals were not profitable, and the sales of these particular properties brought less than the amount owed under the promissory note, the injury caused by Mrs. Belcher's failure to use the sale proceeds to repay the debt would be less than the amount sought in the Complaint and the Motion. Without facts regarding the amount of the sale proceeds, the Court cannot determine the appropriate measure of the damages for this injury. *See generally In re Bradley*, 507 B.R. 192, 205 n.6 (B.A.P. 6th Cir. 2014) ("The measure of damages may not be equivalent to the full amount of the debt owed by Debtor to Lender: only the damages caused by Debtor's conduct in converting the proceeds are nondischargeable pursuant to § 523(a)(6)."); *In re Ferreira*, 608 B.R. 300, 309 (Bankr. N.D. Ga. 2019) ("Here, if the Debtor breached a fiduciary duty by failing to remit sales proceeds to ACE as ACE claimed, the Plaintiff would need to show the amount of the proceeds diverted."); *In re Reid*, 598 B.R. 674, 684 (Bankr. S.D. Ala. 2019) (holding that the debt to be declared nondischargeable under § 523(a)(6) was not the total amount owed under a promissory note but rather the value of the collateral at the time of a sale); *In re Viciedo*, 612 B.R. 233, 241–42 (Bankr. M.D. Fla. 2020) ("In addition, at best, Creal's claim for willful and malicious collateral conversion is limited to the value of the Missing Truck."). For these reasons, the Court finds that summary judgment as to the Sold But Not Paid Notes cannot be granted on this record.

## CONCLUSION

For the reasons stated above,

IT IS ORDERED that the Motion is GRANTED in part and DENIED in part as follows:

1. As to the Never Purchased Notes, the Court declares the debts owed to the affected

    Plaintiffs by Mrs. Belcher NONDISCHARGEABLE under § 523(a)(2)(A), as detailed on Exhibit A to this Order.

2. As to the Second Lien Notes, the Court declares the debts owed to the affected Plaintiffs by Mrs. Belcher NONDISCHARGEABLE under § 523(a)(2)(A), as detailed on Exhibit B to this Order.

3. As to the Sold But Not Paid Notes, the Motion is denied without prejudice to the filing of a renewed motion.

4. As to all relief sought against Mr. Belcher, the Motion is DENIED.

**END OF DOCUMENT**

**Distribution List**

Thomas T. McClendon
Jones & Walden, LLC
699 Piedmont Avenue NE
Atlanta, GA 30308

Jerome Belcher, Sr.
5656 Jonesboro Road
Suite 111, PMB 150
Morrow, GA 30260

Janifer Annette Belcher
5656 Jonesboro Road
Suite 111, PMB 150
Morrow, GA 30260

# EXHIBIT A

## NEVER PURCHASED NOTES

| Plaintiff | Non-Dischargeable Requested | Judgment Requested |
|---|---:|---:|
| Aaron Foster Kramer | $915,227.65 | $915,227.65 |
| Aaron K Investments, LLC | $2,574,514.80 | $2,574,514.80 |
| Anthony Palano | $393,814.82 | $393,814.82 |
| Camelo Palano | $168,033.87 | $168,033.87 |
| FASTHOMESOLUTIONS.COM, LLC | $175,877.10 | $175,877.10 |
| Hoback Investments, LLC | $448,465.40 | $448,465.40 |
| James Case | $156,256.19 | $156,256.19 |
| Lamroc Real Estate | $278,432.71 | $278,432.71 |
| Michael Zionts | $185,858.37 | $185,858.37 |
| Oakmoor Ventures II, LLC | $205,186.78 | $0.00 |
| Pamela Jordan | $81,780.03 | $81,780.03 |
| Prudent Shore Investment, LLC | $119,084.87 | $119,084.87 |
| Roka Consultants, Inc. | $8,580.51 | $8,580.51 |
| Tanner Holdings, LLC and Bricks To Clicks, LLC | $141,297.60 | $141,297.60 |
| | **$5,852,410.69** | **$5,647,223.92** |

# EXHIBIT B

## SECOND LIEN NOTES

| Plaintiff | Non-Dischargeable Requested | Judgment Requested |
|---|---|---|
| Aaron Foster Kramer | $1,308,237.11 | $722,585.94 |
| Aaron K Investments, LLC | $4,229,097.88 | $2,157,503.11 |
| AKI Investments, LLC | $169,148.25 | $169,148.25 |
| Camelo Palano | $189,056.94 | $189,056.94 |
| Culoir Investments, LLC | $239,274.73 | $158,054.97 |
| David Zionts | $82,074.71 | $0.00 |
| Denise Wayne | $89,769.22 | $0.00 |
| Dreams for Life, LLC | $221,544.26 | $118,950.87 |
| GMT Management Group, LLC | $91,479.10 | $0.00 |
| Hoback Investments, LLC | $1,446,740.39 | $705,289.42 |
| Howard M. Shore | $82,758.67 | $0.00 |
| Kathleen Palano | $42,747.25 | $0.00 |
| Kingdom Equity, LLC | $98,318.66 | $0.00 |
| Lamroc Real Estate | $217,480.99 | $170,031.55 |
| Linda J. Lewis | $106,868.11 | $0.00 |
| Marc Ensign | $195,533.72 | $195,533.72 |
| Michael and Denise L. Hammond | $404,653.57 | $404,653.57 |
| Walsh Capital Fund Trust | $79,509.88 | $0.00 |
| Wayne Godwin | $160,210.49 | $160,210.49 |
| WGF Ventures, LLC | $182,263.99 | $182,263.99 |
| | **$9,636,767.90** | **$5,333,282.80** |